TRAVCO HOTELS, INC. v. PIEDMONT NATURAL GAS COMPANY, INC. *and* K & W RESTAURANT, INC. v. PIEDMONT NATURAL GAS COMPANY, INC. v. TRAVCO HOTELS, INC.

No. 281A91

(Filed 4 September 1992)

**1. Appeal and Error § 134 (NCI4th) — denial of motion to disqualify opposing counsel — interlocutory — dismissal of appeal — affirmed**

The Court of Appeals correctly dismissed as interlocutory defendant's appeal of an order *denying* its motion to disqualify opposing counsel on the ground that opposing counsel had obtained confidential information during representation of defendant in a previous matter. Although the use against defendant of confidential information gained in representing defendant would deprive defendant of a substantial right not to have its attorney-client confidences breached, defendant can adequately protect its right not to have its confidences used against it to its detriment by appealing any adverse final judgment. *Lowder v. All Star Mills, Inc.*, 60 N.C. App. 275, should no longer be considered authoritative on this point. However, the *granting* of a motion to disqualify counsel, as in *Goldston v. American Motors Corp.*, 326 N.C. 723, has immediate and irreparable consequences for both the disqualified attorney and the individual who hired the attorney and neither deprivation can be adequately addressed by a later appeal.

**Am Jur 2d, Appeal and Error § 171.5.**

## TRAVCO HOTELS v. PIEDMONT NATURAL GAS CO.

[332 N.C. 288 (1992)]

**Appealability of state court's order granting or denying motion to disqualify attorney. 5 ALR4th 1251.**

2. **Attorneys at Law § 36 (NCI4th) — representation against former client — motion to disqualify denied — no abuse of discretion**

The trial judge did not abuse his discretion in denying a motion to disqualify opposing counsel based on representation of the movant in prior litigation where the trial judge examined counsel's file on its former representation *in camera* and issued an order covering 67 pages in the record and containing 120 findings of fact, many of which related to the nature of the prior litigation and the information acquired by counsel during the course of its representation; concluded among other things that counsel had not used or disclosed any confidential information or secrets, that the material facts and issues in the two cases were not substantially related, that there had been no appearance of impropriety, and that there was no evidence that the firm's attorneys in this action had ever had access to or used information gained from the prior action; and expressly stated that it chose to believe that the attorneys would not risk sanctions or ignore their professional obligations even without sanctions.

**Am Jur 2d, Attorneys at Law § 189.**

**Propriety and effect of attorney representing interest adverse to that of former client. 52 ALR2d 1243.**

Justice LAKE did not participate in the consideration or decision of this case.

APPEAL of right by defendant pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 102 N.C. App. 659, 403 S.E.2d 593 (1991), dismissing defendant's appeal of the denial of its motion to disqualify plaintiff's counsel by *Freeman (William H.), J.*, on 11 January 1990 in Superior Court, FORSYTH County. Heard in the Supreme Court on 11 December 1991.

*Womble Carlyle Sandridge & Rice, by Grady Barnhill, Jr., and William C. Raper; Bailey & Thomas, by David W. Bailey, Jr.; Wyatt, Early, Harris, Wheeler & Hauser, by Kim R. Bauman, for plaintiff-appellee, Travco Hotels, Inc.*

*Hedrick, Eatman, Gardner & Kincheloe, by John A. Gardner, III, Scott M. Stevenson and Brian D. Lake, for defendant-appellant, Piedmont Natural Gas, Inc.*

### TRAVCO HOTELS v. PIEDMONT NATURAL GAS CO.

[332 N.C. 288 (1992)]

EXUM, Chief Justice.

[1] The issue before us is whether the Court of Appeals erred in dismissing, as interlocutory, defendant's appeal of an order denying its motion to disqualify opposing counsel.

This action is one of a multitude of lawsuits arising out of an 18 January 1988 natural gas explosion in Winston-Salem. The explosion destroyed a hotel and restaurant building owned by TRAVCO Hotels, Inc. ("Travco") and leased by K & W Cafeterias, Inc. The complaint alleges that the explosion was caused by the negligence of defendant Piedmont Natural Gas Company, Inc. ("Piedmont"). Numerous lawsuits have been filed, and are currently pending, against Piedmont. On 12 May 1989 the cases stemming from the explosion were declared exceptional pursuant to Rule 2.1[1] of the General Rules of Practice for the Superior and District Courts. With the consent of all parties, the two cases comprising this action were consolidated and treated as "flagship" cases to be tried first. Judge William H. Freeman, Resident Superior Court Judge in Forsyth County, was designated to preside over the cases arising from the explosion.

On 11 September 1989, attorneys for Piedmont moved to disqualify the law firm of Womble Carlyle Sandridge & Rice ("Womble"), one of several firms representing plaintiff Travco. The motion alleged that Womble had obtained confidential information during representation of Piedmont in a previous matter, in which Piedmont had sought damages when one of its gas lines was broken during construction work. A lawsuit, *Piedmont Natural Gas Co. v. Blue*

---

1. Rule 2.1. Designation of Exceptional Civil Cases.

(a) The Chief Justice may designate any case or group of cases as "exceptional." A senior resident superior court judge, chief district court judge, or presiding superior court judge may *ex mero motu*, or on motion of any party, recommend to the Chief Justice that a case or cases be designated as exceptional.

. . . .

(d) Factors which may be considered in determining whether to make such designation include: the number and diverse interests of the parties; . . . the complexity of the evidentiary matters and legal issues involved; whether it will promote the efficient administration of justice; and such other matters as the Chief Justice shall deem appropriate.

(e) The Chief Justice may enter such orders as are appropriate for the pretrial, trial, and other disposition of such designated case or cases.

*Ridge Concrete* (*"Blue Ridge"*), was filed by Womble on Piedmont's behalf on 28 August 1985 in Forsyth County (No. 85-CVS-4041). Womble's involvement in that matter concluded in August 1987, shortly after the trial of the case. The incident that precipitated the *Blue Ridge* litigation is unrelated to the 18 January 1988 natural gas explosion.

On 11 January 1990 Judge Freeman in an order supported by thorough and detailed findings, denied Piedmont's motion to disqualify Womble. Piedmont filed notice of appeal with the Court of Appeals. Travco moved to dismiss Piedmont's appeal on the ground that the order appealed from was interlocutory. A divided panel of the Court of Appeals agreed and dismissed the appeal. *Travco Hotels v. Piedmont Natural Gas Co.*, 102 N.C. App. 659, 403 S.E.2d 593 (1991) (Phillips, J., dissenting).

I.

The first question to be addressed is whether the Court of Appeals correctly concluded that Judge Freeman's order denying Piedmont's motion to disqualify Womble was not appealable. We think the Court of Appeals was correct. We affirm its decision and remand the matter for further proceedings.

Generally, there is no right of immediate appeal from interlocutory orders and judgments. *Goldston v. American Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). However, N.C.G.S. §§ 1-277 and 7A-27 set forth certain exceptions to the general rule. *Id.* at 725, 392 S.E.2d at 736; *Waters v. Qualified Personnel, Inc.*, 294 N.C. 200, 207, 240 S.E.2d 338, 343 (1978). N.C.G.S. § 1-277(a) (1983) provides that:

> An appeal may be taken from every judicial order or determination of a judge of a superior or district court, upon or involving a matter of law or legal inference, whether made in or out of session, which affects a substantial right claimed in any action or proceeding . . . .

N.C.G.S. § 7A-27(d) (1989) provides that:

> From any interlocutory order or judgment of a superior court or district court in a civil action or proceeding which affects a substantial right . . . appeal lies of right directly to the Court of Appeals.

TRAVCO HOTELS v. PIEDMONT NATURAL GAS CO.

[332 N.C. 288 (1992)]

This Court has consistently found "that no appeal lies to an appellate court from an interlocutory order or ruling of the trial judge unless such ruling or order deprives the appellant of a substantial right which he would lose if the ruling or order is not reviewed before final judgment." *Waters*, 294 N.C. at 207, 240 S.E.2d at 343 (quoting *Consumers Power v. Duke Power Co.*, 285 N.C. 434, 437, 206 S.E.2d 178, 181 (1974) ). "Essentially a two-part test has developed—the right itself must be substantial and the deprivation of that substantial right must potentially work injury . . . if not corrected before appeal from final judgment." *Goldston v. American Motors Corp.*, 326 N.C. at 726, 392 S.E.2d at 736; *see also Wachovia Realty Investments v. Housing, Inc.*, 292 N.C. 93, 232 S.E.2d 667 (1977). However, as we have previously noted, the "substantial right" test is more easily stated than applied. *Waters*, 294 N.C. at 208, 240 S.E.2d at 343. In determining which interlocutory orders are appealable and which are not, we must consider the particular facts of each case and the procedural history of the order from which an appeal is sought. *Id.* at 208, 240 S.E.2d at 343; *Patterson v. DAC Corp.*, 66 N.C. App. 110, 112, 310 S.E.2d 783, 785 (1984).

Piedmont contends that because Womble previously represented it in a matter involving the rupture of one of its gas lines, Womble may not represent Travco in the present action against Piedmont. Piedmont contends that during the course of the *Blue Ridge* litigation Womble became privy to confidential information which it may use to Piedmont's detriment and to give Travco an unfair advantage in this litigation. Piedmont argues it has a right to prevent Womble from using any confidential information against it which may have been gleaned from the prior representation; this right is substantial; and the only way it can be vindicated is by removal of Womble as counsel for Travco. Failure, therefore, to review the order denying Piedmont's motion before final judgment at trial would mean that Piedmont's substantial right would be forever lost if, indeed, the denial of its motion was error.

We agree with Piedmont that the use against it by Womble's client in this trial of confidential information gained by Womble when it represented Piedmont would deprive Piedmont of a substantial right not to have its attorney-client confidences breached to its detriment. We disagree, however, with the argument that the order denying Piedmont's motion to disqualify Womble cannot be effectively reviewed and Piedmont's rights protected after final

judgment at trial. The order denying the motion to disqualify counsel fails the second prong of the two-part "substantial right" test.

Piedmont can adequately protect its right not to have its confidences used against it to its detriment by appealing any adverse final judgment. In this appeal Piedmont may assign error to the denial of its motion to disqualify Womble and the improper use, should there be any, of its confidences by Womble in the representation of Piedmont's adversary. If reversible error was committed in the denial of the motion or in the improper use of confidences, or both, then Piedmont will be given a new trial at which these errors would not occur.

We recognize that in *Goldston v. American Motors Corp.*, 326 N.C. 723, 392 S.E.2d 735, we held that an interlocutory order granting a motion to disqualify counsel was immediately appealable. The granting of a motion to disqualify counsel, unlike a denial of the motion, has immediate and irreparable consequences for both the disqualified attorney and the individual who hired the attorney. The attorney is irreparably deprived of exercising his right to represent a client. The client, likewise, is irreparably deprived of exercising the right to be represented by counsel of the client's choice. Neither deprivation can be adequately redressed by a later appeal of a final judgment adverse to the client.

Other courts have persuasively concluded that the denial of a motion to disqualify counsel is not immediately appealable but must be addressed on an appeal from a final judgment at trial. The United States Supreme Court resolved the issue as it applies to federal civil litigation when it held "that a district court's order denying a motion to disqualify counsel is not appealable under § 1291 prior to final judgment in the underlying litigation." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379, 66 L. Ed. 2d 571, 581 (1981). The Court in *Firestone* stated the three-pronged federal test for immediate appealability of "final 'collateral orders' " as follows: "[T]he order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Id.* at 375, 66 L. Ed. 2d at 579. Conceding that an order denying a motion to disqualify counsel met the first prong of the test and assuming that it also met the second, the Court concluded that it did not meet the third prong, saying, "petitioner is unable to demonstrate that an order denying disqualifica-

TRAVCO HOTELS v. PIEDMONT NATURAL GAS CO.

[332 N.C. 288 (1992)]

tion is 'effectively unreviewable on appeal from a final judgment' within the meaning of our cases." *Id.* at 376, 66 L. Ed. 2d at 579.

The Supreme Court of Ohio has recognized the distinction for purposes of immediate appealability between orders allowing and orders denying motions to disqualify counsel. In *Bernbaum v. Silverstein*, 62 Ohio St. 2d 445, 406 N.E.2d 532 (1980), the Court held that an order denying a motion to disqualify counsel was not immediately appealable because the order could be effectively reviewed for error on an appeal from a final judgment adverse to the movant. Later in *Russell v. Mercy Hospital*, 15 Ohio St. 3d 37, 472 N.E.2d 695 (1984), the Ohio Court concluded that the granting of a motion to disqualify counsel was immediately appealable. The Court reasoned, *id.* at 42, 472 N.E.2d at 699:

> The finality of the two orders is as dissimilar as their results. An order granting disqualification seriously disrupts the progress of litigation while new counsel is obtained, but one refusing such relief merely allows the action to proceed and has no permanent effect of any kind. A mere refusal to act is necessarily less conclusive than the affirmative grant of the requested relief.

The argument that irreparable damage could be done to a party by the disclosure of the party's attorney-client confidences has been addressed by one scholar as follows:

> Prejudice to the litigation . . . can be corrected by a new trial . . . . This remedy may be less than ideal from the movant's point of view, both because damage from an attorney's improper disclosure of confidences might never be fully corrected, and because retrial is costly and inconvenient. The disclosure problem, however, is no more curable by an immediate appeal; the challenged attorney will generally have had ample opportunity to disclose all that he knows before he is disqualified upon appeal.

Michael W. McConnell, *The Appealability of Orders Denying Motions for Disqualification of Counsel in the Federal Courts*, 45 U. Chic. L. Rev. 450, 457 (1978).

Because of our decision on this issue, *Lowder v. All Star Mills, Inc.*, 60 N.C. App. 275, 300 S.E.2d 230 (1983), which reached a contrary conclusion, should no longer be considered authoritative on this point.

## II.

**[2]**   Although not required to do so, we elect to consider the merits of the underlying appeal pursuant to our supervisory powers under Article IV, § 12(1) of the North Carolina Constitution. Section 12(1) gives this Court jurisdiction "to review upon appeal any decision of the courts below, upon any matter of law or legal inference" and gives it "general supervision and control over the proceedings of the other courts." *Crist v. Moffatt*, 326 N.C. 326, 330, 389 S.E.2d 41, 44 (1990). Pursuant to this constitutional grant of jurisdiction, we elect to treat Piedmont's appeal from the order as a petition for our writ of certiorari which we now allow.

At issue on the merits is whether Judge Freeman erred when he denied Piedmont's motion to disqualify Womble from representing Travco.

Decisions regarding whether to disqualify counsel are within the discretion of the trial judge and, absent an abuse of discretion, a trial judge's ruling on a motion to disqualify will not be disturbed on appeal. *In re Lee*, 85 N.C. App. 302, 310, 354 S.E.2d 759, 764-65, *disc. rev. denied*, 320 N.C. 513, 358 S.E.2d 520 (1987).

Piedmont contends Judge Freeman abused his discretion in denying its motion to disqualify Womble. It contends that Womble's continued representation of Travco in this litigation is a violation of Canon IV, Rule 4, and Canon V, Rule 5.1 of the Rules of Professional Conduct, which govern the conduct of lawyers in North Carolina. Canon IV, Rule 4, essentially admonishes lawyers not to reveal knowingly the confidences of a client obtained during the course of the professional relationship. Rule 4 states: "For the purposes of the rule, 'client' refers to present and former clients." Canon V, Rule 5.1(A) admonishes lawyers to avoid conflicts of interests in the representation of clients. Rule 5.1(C) requires that a lawyer "withdraw from representation of any party he cannot adequately represent or represent without using the confidential information or secrets of another client or former client except as Rule 4 would permit . . . ." Rule 5.1(D) prohibits a lawyer who has formerly represented a client from representing "another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after full disclosure."

Judge Freeman conducted a full and thorough hearing on Piedmont's disqualification motion. He examined *in camera* Womble's 2900-page file on its former representation of Piedmont in the *Blue Ridge* case. Judge Freeman's order denying Piedmont's motion covers 67 pages in the record and is supported by 120 findings of fact. Many of the findings relate to the nature of the *Blue Ridge* litigation and the information about Piedmont acquired by Womble during the course of Womble's representation of Piedmont. These findings include the following:

24. The scope of the *Blue Ridge* case was quite limited. The issues were simple; the basic facts were not in dispute. The court's *in camera* review of the file shows that the documents in the file are focused specifically to the *Blue Ridge* facts.

. . . .

33. The little information obtained by the Womble Carlyle attorneys in *Blue Ridge,* other than that directly related to *Blue Ridge*, concerning Piedmont's procedures, practices, operations and personnel was of a most general nature and much too general to be of assistance in this action (as will be analyzed later) and was most favorable to Piedmont. Messrs. Norris and Raker testified at their depositions that they knew of nothing that they or Piedmont had done wrong in connection with *Blue Ridge*. They knew of no procedures or guidelines which had been violated. Consequently, they had communicated nothing detrimental about the company to the Womble Carlyle attorneys. Counsel for Piedmont produced no documents or records from Womble Carlyle's files indicating any wrong-doing by Piedmont which came to Womble Carlyle's attention.

34. At no time in connection with representing Piedmont in the *Blue Ridge* case did the Womble Carlyle attorneys become privy to any information, procedures, guidelines, or practices which appear to the court to be unique, unexpected, unusual or novel, rather they appear commonplace and routine for corporations generally. It is to be anticipated that any corporation of any size will have a "chain of command." Piedmont's procedures and practices involved in *Blue Ridge* were what the court would have anticipated them to be. It is common knowledge that natural gas companies have gas mains and lines; that the gas companies will seek to repair the lines if they are

ruptured and that they will have the men and equipment needed. No true secrets or real confidences appear to have been involved in *Blue Ridge*. Nothing learned by Womble Carlyle attorneys in *Blue Ridge* would have been embarrassing to Piedmont nor likely to be detrimental to Piedmont. The specifics of any conversation between the Womble Carlyle attorneys and Messrs. Norris and Baker would have been subject to the attorney-client privilege, but it nowhere appears that Womble Carlyle was told anything in the conversations, the underlying facts of which could not have been obtained through discovery.

35. A detailed analysis of the pleadings, discovery and trial of *Blue Ridge*, including portions of the Womble Carlyle file shows that the discovery, interviews, depositions and trial were focused on the specific facts involved in *Blue Ridge*, the subject matter of which and the facts of which and the actually litigated issues of which were markedly and pronouncedly different from those in the present action. The similarities are superficial and, particularly in the context of the complexity of *Travco*, are not significant. The major difference, among many differences, in the two cases is that *Travco* involves an explosion, *Blue Ridge* did not. A key issue in *Travco* is what caused the gas line to rupture, whether corrosion or the collapse of a wall. There was no question in *Blue Ridge* as to how the rupture occurred. Cathodic protection and maintenance of the lines are key issues in *Travco*; neither issue was involved in *Blue Ridge*. The duty of meter readers to see and observe conditions at or near the meters is another important issue in *Travco*; meter reading was in no way involved in *Blue Ridge*. Leak detection is a key issue in *Travco*; it was not involved in *Blue Ridge*. A key issue in *Blue Ridge* was whether the pipe was laid in accordance with Department of Transportation directions and was where it was shown to be on a Department of Transportation map. Neither are at issue in *Travco*. The accidents occurred five miles apart and in areas served by different mains. In *Travco*, the explosion was at a hotel/restaurant; in *Blue Ridge*, the leak was beneath a creekbed. The relationship between Piedmont and the Utilities Commission is at issue in Piedmont; it was not in *Blue Ridge*. A six-inch gas main was involved in *Blue Ridge*; a two-inch service line is involved in *Travco*.

36. An examination of the areas pointed to by Piedmont to show a substantial relationship between the *Travco* and *Blue Ridge* cases follows. The court determines that the similarities are superficial; that the few similarities are not significant, particularly in view of the complexity of *Travco*; that none of the issues or facts are similar in any meaningful way; that the subject matters are different; that many of the areas pointed to by Piedmont are more matters of general education or common sense than the "stuff" of confidential communications or secrets and that no confidences, secrets or information were imparted or would logically have been imparted to the Womble Carlyle attorneys which would assist them in this action in any other than a most superficial and meaningless way.

These findings are fully supported by the evidence.

Judge Freeman's findings support his conclusions which, among others, were:

2. Womble Carlyle has not used or disclosed any confidential information or secrets of Piedmont in violation of the Rules of Ethics.

. . . .

4. The material facts and real issues in the matters or cases, including *Blue Ridge*, Womble Carlyle has handled on behalf of Piedmont were not substantially related to the facts and issues in the present one within the meaning of Canon V, Rule 5.

. . . .

6. Womble Carlyle did not violate Canon V, Rule 5.1(A), (C) or (D) in undertaking the representation of Travco in this litigation.

. . . .

8. No appearance of impropriety has occurred.

9. . . . .

. . . .

(e) Piedmont agrees that it has no evidence that the Womble Carlyle attorneys prosecuting this action have ever had ac-

cess to or used any information gained in *Blue Ridge*. This court chooses to believe, until shown to the contrary, that the Womble Carlyle attorneys will not risk the heavy sanctions attendant to such use, or that they would ignore their professional responsibilities, even without such sanctions.

We conclude that Judge Freeman acted well within his discretionary authority in denying Piedmont's motion to disqualify Womble.

The result is that the Court of Appeals' decision dismissing Piedmont's appeal of the denial of its motion to disqualify counsel is affirmed and, in the exercise of our supervisory powers, we find no abuse of discretion in Judge Freeman's order. The matter is remanded to the Superior Court, Forsyth County, for further proceedings.

Affirmed and remanded.

Justice LAKE did not participate in the consideration or decision of this case.