DILLON, Judge.
*104 This dispute involves a business relationship between China-based Neusoft China, a manufacturer of medical imaging equipment (e.g., CT scanners) and North Carolina-based Neuisys, LLC ("NC Distributor"), a distributor of Neusoft China equipment in the United States.
In this action, NC Distributor has asserted six claims against Neusoft China. NC Distributor has also asserted claims against Neusoft USA (a wholly-owned subsidiary of Neusoft China) and against two Neusoft USA employees (Tom Buse and Keith Mildenberger) who formerly worked for NC Distributor.
I. Summary of Opinion
A. Appeal by Neusoft China
In 2012, the trial court entered an order (the "2012 order") staying four of NC Distributor's six claims against Neusoft China, *854 concluding that the four claims were subject to arbitration based on the arbitration clause in their distribution agreement. The trial court, however, denied Neusoft China's motion to stay the two other claims, concluding that those two claims were not subject to arbitration.
In 2014, the trial court entered another order (the "2014 order") denying a renewed motion by Neusoft China to refer to arbitration or, in the alternative, stay the two claims that the court had concluded were nonarbitrable in its 2012 order.
Neusoft China has appealed the 2014 order. We hold that we have jurisdiction over this appeal. On the merits, we hold that the trial court did not err in denying Neusoft China's renewed motion. Accordingly, we affirm that order.
B. Appeals by Neusoft USA and Messrs. Buse and Mildenberger
In 2013, Neusoft USA and Messrs. Buse and Mildenberger moved the trial court to stay NC Distributor's claims against them pending arbitration of NC Distributor's four arbitrable claims against Neusoft China. In 2014, the trial court denied these motions. Neusoft USA and Messrs. Buse and Mildenberger appeal from these interlocutory orders. We hold that we have jurisdiction over these appeals; however, on the merits, *105 we hold that the trial court did not err in denying the motions to stay. Accordingly, we affirm those orders.
II. Background
A. Facts
In 2003, Neusoft China entered into an agreement (the "2003 Distribution Agreement") with NC Distributor authorizing NC Distributor to become the exclusive distributor of its equipment in various markets in the United States. The 2003 Distribution Agreement contained a clause whereby the parties agreed to settle disputes arising thereunder through arbitration in China.
In the years that followed, in addition to selling Neusoft China's equipment in the United States, NC Distributor also developed a profitable business-outside the 2003 Distribution Agreement-contracting with the end users of the equipment to provide warranty repair and service work.
In 2009, Neusoft China entered into negotiations to acquire NC Distributor. During these negotiations, the parties entered into a second agreement (the "2009 Non-disclosure Agreement") whereby NC Distributor agreed to disclose its confidential information-including information about its warranty business-and whereby Neusoft China agreed to use the confidential information only for the purpose of "evaluating, negotiating and implementing" the potential acquisition. Unlike the 2003 Distribution Agreement, however, this 2009 Non-disclosure Agreement did not contain an arbitration clause. Ultimately, the negotiations did not lead to a deal.
In 2010, Neusoft China and NC Distributor amended the 2003 Distribution Agreement to extend its term. However, under the terms of the amendment, NC Distributor was no longer Neusoft China's exclusive distributor in any region.
Shortly thereafter, Neusoft China-through its subsidiary Neusoft USA-began competing directly with NC Distributor in the distribution and servicing of the equipment. During this time, Neusoft USA hired away employees of NC Distributor, including Messrs. Buse and Mildenberger.
In September of 2011, representatives of Neusoft USA, including Mr. Buse, met with representatives of NC Distributor. During a break in the meeting, a representative of NC Distributor accessed Mr. Buse's computer without his authorization and transferred certain information *106 from the computer onto a thumb drive, ostensibly to determine whether Neusoft USA was using any of NC Distributor's confidential information.
B. Statement of Proceedings
In November of 2011, Neusoft USA commenced this action against NC Distributor, asserting claims in connection with the access of Mr. Buse's computer.
In December of 2011, NC Distributor answered, asserting counterclaims against Neusoft USA. NC Distributor also brought in Neusoft China, asserting six claims.
*855 In October of 2012, after a hearing, the trial court determined that four of NC Distributor's six claims against Neusoft China arose under the 2003 Distribution Agreement and were, therefore, subject to arbitration. However, the court ruled that two of the claims-NC Distributor's claims for breach of the 2009 Non-disclosure Agreement (which did not have an arbitration clause) and for unfair and deceptive practices in connection with this breach-did not "arise in connection with the interpretation or implementation" of the 2003 Distribution Agreement, denying Neusoft China's motion to stay proceedings on those two claims pending arbitration of the other four claims. This 2012 order was not appealed.
In March of 2013, with leave of court, NC Distributor filed an amended pleading, bringing in Mr. Buse and Mr. Mildenberger, and alleging claims against them.
In December of 2013, after engaging in additional discovery, Neusoft China once again moved the trial court to refer NC Distributor's claims for breach of the 2009 Non-disclosure Agreement and for unfair and deceptive practices to arbitration or, in the alternative, stay those claims pending arbitration of the four arbitrable claims. Neusoft USA and Messrs. Buse and Mildenberger also filed motions to stay NC Distributor's claims against them pending arbitration of NC Distributor's arbitrable claims against Neusoft China.
In January of 2014, after a hearing on the matter, the trial court entered orders denying all three motions, allowing both the claims for breach of the 2009 Non-disclosure Agreement and for unfair and deceptive practices to proceed. Neusoft China, Neusoft USA, and Messrs. Buse and Mildenberger entered timely notices of appeal.
*107 III. Analysis
A. Right to Immediate Appeal
Each of the orders being appealed is interlocutory because none are dispositive as to all claims and all parties. Bullard v. Tall House Bldg. Co., Inc., 196 N.C.App. 627, 637, 676 S.E.2d 96, 103 (2009) ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy."). Generally, there is no right to immediate appeal from an interlocutory order. Travco Hotels, Inc. v. Piedmont Natural Gas Co., Inc., 332 N.C. 288, 291, 420 S.E.2d 426, 428 (1992). However, N.C. Gen.Stat. §§ 1-277 and 7A-27 set forth exceptions to this general rule. Id. Applying these statutes, our Supreme Court has held that a right to an immediate appeal from an interlocutory order exists where the order "deprives the appellant of a substantial right which he would lose if the ruling or order is not reviewed before final judgment." Id. at 292, 420 S.E.2d at 428 (internal marks omitted).
Our Supreme Court has developed a "two-part test," see id., to determine whether an interlocutory order is immediately appealable where an appellant claims to have been deprived of a substantial right: (1) "the right itself must be substantial"; and, (2) "the deprivation of that ... right must potentially work injury ... if not corrected before appeal from final judgment." Frost v. Mazda Motors of America, Inc., 353 N.C. 188, 192, 540 S.E.2d 324, 327 (2000) (internal marks omitted). However, as the Supreme Court has recognized, "the 'substantial right' test is more easily stated than applied[,]" and appellate courts "must consider the particular facts of each case and the procedural history of the order from which an appeal is sought." Travco Hotels, 332 N.C. at 292, 420 S.E.2d at 428. Therefore, to determine whether we have jurisdiction over an appeal, we must discern the precise nature of the right the appellant claims as substantial.[1] To that *856 end, each appellant bears the burden of *108 demonstrating that the interlocutory order appealed from "deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits." Jeffreys v. Raleigh Oaks Joint Venture, 115 N.C.App. 377, 380, 444 S.E.2d 252, 254 (1994).
We address the propriety of Neusoft China's appeal separately from the appeals taken by Neusoft USA and by Mr. Muse and Mr. Mildenberger. We then address NC Distributor's motion to strike.
1. Neusoft China
In its brief, Neusoft China states that it is appealing the 2014 order denying its right to arbitrate. We have held that the right to arbitrate is substantial. See, e.g., Prime South Homes, Inc. v. Byrd, 102 N.C.App. 255, 258, 401 S.E.2d 822, 825 (1991). We agree that the 2014 order affects this substantial right. Specifically, the effect of the 2014 order is to require Neusoft China to proceed in defending two of NC Distributor's claims against it in court rather than in arbitration. As we have often noted regarding the need for immediate review in such cases, the right to arbitrate "may be lost if review is delayed[.]" See, e.g., Edwards v. Taylor, 182 N.C.App. 722, 724, 643 S.E.2d 51, 53 (2007). Therefore, we hold that Neusoft China has met its burden to demonstrate that we have jurisdiction over its appeal of the 2014 order.[2] Accordingly, we consider the merits of its appeal in Section III. B.
2. Neusoft USA and Messrs. Buse and Mildenberger
Neusoft USA and Messrs. Buse and Mildenberger appeal from interlocutory orders denying their motions to stay NC Distributor's claims against them pending arbitration of the claims asserted against Neusoft China. They argue, inter alia, that they have the right to have the issue of whether NC Distributor can recover damages for the loss of its exclusivity under the 2010 amendment to the Distribution Agreement decided by arbitration. These appellants essentially argue that they have the right to have this issue decided by arbitration even though they are not parties to the 2003 Distribution Agreement.
Generally, we do not recognize a right to immediate appeal from an interlocutory order denying a stay of litigation. Howerton v. Grace Hosp., Inc., 124 N.C.App. 199, 201-02, 476 S.E.2d 440, 442-43 (1996).
*109 Moreover, the right to immediate appeal from an interlocutory order denying arbitration or denying a stay pending arbitration is predicated on the deprivation of the right to arbitrate, which inheres in the contract providing for arbitration. See Moose v. Versailles Condo. Ass'n, 171 N.C.App. 377, 381-82, 614 S.E.2d 418, 422 (2005). Nevertheless, we recognize that by operation of common law agency and contract principles, a contractual right to arbitrate may become enforceable by or against a non-signatory to the agreement. Carter v. TD Ameritrade Holding Corp., 218 N.C.App. 222, 229, 721 S.E.2d 256, 261-62 (2012). Since the right to arbitrate a claim or issue is a substantial right if it is enforceable by or against an appellant who is a non-signatory to the agreement creating it, we hold that we have jurisdiction to review the merits of Neusoft USA and Messrs. Buse and Mildenberger's appeals.[3]
*857 B. Merits of the Appeals
1. Neusoft China
Having determined that the 2014 order denying Neusoft China's renewed motion is immediately appealable, we now consider the merits of the appeal. For the reasons stated below, we hold that the trial court did not err in denying Neusoft China's renewed motion; and, therefore, we affirm the trial court's 2014 order.
Our Supreme Court has held that one trial court judge has the authority to reconsider an interlocutory order entered by another trial court judge "only in the limited situation where the party seeking to alter that prior ruling makes a sufficient showing of a substantial change in circumstances during the interim which presently warrants a different or new disposition of the matter." State v. Duvall, 304 N.C. 557, 562, 284 S.E.2d 495, 499 (1981) (emphasis added). As our Supreme Court observed, "if the rule were otherwise, the normal reviewing function of appellate courts would be usurped, and, in some instances, the orderly trial process could be converted into a chaotic, protracted affair as one party attempted to shop around for a more favorable ruling from another superior court judge." Id. at 562, 284 S.E.2d at 498.
In the present case, the trial court concluded in its 2014 order that there had "been no substantial change in circumstances [ ] which would *110 warrant a different or new disposition[.]" Neusoft China argues, however, that a substantial change warranting the modification of the trial court's 2012 order did occur. Specifically, Neusoft China contends as follows: Initially, NC Distributor merely asserted that the two claims were based on a theory that Neusoft China had shared NC Distributor's confidential information with its subsidiary, Neusoft USA. Accordingly, the trial court determined that they were not arbitrable since they did not relate to the 2003 Distribution Agreement. However, after the 2012 order was entered and the time to appeal that order had passed, a representative of NC Distributor stated in a deposition that these claims were based on Neusoft China's improper use of the confidential information as leverage during the 2010 renegotiation of the Distribution Agreement. According to Neusoft China, this purported change in theory is a "substantial change" because it amounts to an admission by NC Distributor that the two claims based on the Non-disclosure Agreement and found by the trial court to be nonarbitrable in its 2012 order do, in fact, relate to the Distribution Agreement and are, therefore, subject to the arbitration clause contained in that agreement.
Generally, we review a trial court's decision to grant or deny a stay of nonarbitrable claims in a dispute pending arbitration of the arbitrable claims for an abuse of discretion. Sloan Fin. Grp., Inc. v. Beckett, 159 N.C.App. 470, 485, 583 S.E.2d 325, 334 (2003). However, the determination of whether a claim or issue in a dispute is arbitrable is a question of law we review de novo. See, e.g., Raspet v. Buck, 147 N.C.App. 133, 136, 554 S.E.2d 676, 678 (2001). Therefore, we review de novo whether the trial court correctly concluded that Neusoft China had failed to show that a substantial change in circumstances had occurred.
NC Distributor's complaint against Neusoft China alleges that Neusoft China used confidential information, including but not limited to "customer data, financial data, and projected revenue data" that were shared for the sole purpose of "evaluating, negotiating, and implementing" the acquisition, "to formulate a plan to drive [NC Distributor] out of business for [Neusoft China's] own benefit," and by disclosing said information to Neusoft USA. NC Distributor's complaint also alleges that Neusoft China used the confidential information acquired in connection with the potential acquisition "to establish [Neusoft USA]" and "to formulate a plan of forcing [NC Distributor] out of business and to otherwise steal [NC Distributor's] employees and customers," further alleging that it used said information to outbid NC Distributor, offering the same products to NC Distributor's customers below cost, and that this "conduct constitute[d] unfair methods of *858 competition and unfair or *111 deceptive acts or practices[.]" Thus, the allegations in NC Distributor's complaint put Neusoft China on notice that it was seeking damages for use of confidential information obtained pursuant to the Non-disclosure Agreement to compete unfairly with it rather than for the sole purpose of evaluating and negotiating a potential acquisition, and that this use of the information not only constituted breach of the agreement, but also independently qualified as an unfair and deceptive practice under North Carolina law.
Neusoft China traces the origins of the alleged change in NC Distributor's theory of the case to the deposition testimony of NC Distributor's CEO, Kim Russell. Specifically, Mr. Russell testified that Neusoft China used NC Distributor's confidential information provided pursuant to the Non-disclosure Agreement as leverage in negotiations over amending the Distribution Agreement, specifically using the word "threat" during his testimony. However, the "threat" to which the deponent referred did not introduce some new theory of liability. Rather, the context plainly demonstrates that the deponent's testimony was that Neusoft China used the confidential information to compete with NC Distributor rather than for purposes of evaluating and negotiating the potential acquisition. The deponent was merely stating one way Neusoft China used the information competitively, namely as leverage in negotiations over the 2010 amendment to the Distribution Agreement. Therefore, we hold that the trial court did not err in denying Neusoft China's renewed motion to refer the claims continuing in litigation to arbitration or, in the alternative, to stay those claims pending arbitration.
Neusoft China also argues that the trial court erred in failing to conclude that NC Distributor was equitably estopped from denying the applicability of the arbitration clause in the Distribution Agreement to the claims for breach of the Non-disclosure Agreement and for unfair and deceptive practices. Specifically, Neusoft China contends that NC Distributor is using the Distribution Agreement as a reference point in calculating its damages. We do not believe the trial court committed reversible error in this regard.
Equitable estoppel arises when one party, by his acts, representations, or silence when he should speak, intentionally, or through culpable negligence, induces a person to believe certain facts exist, and that person reasonably relies on and acts on those beliefs to his detriment. There need not be actual fraud, bad faith, or an intent to mislead or deceive for the doctrine of equitable estoppel to apply.
*112 Gore v. Myrtle/Mueller, 362 N.C. 27, 33, 653 S.E.2d 400, 405 (2007) (internal marks and citation omitted). In the context of arbitration, "the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." Ellen v. A.C. Schultes of Maryland, Inc., 172 N.C.App. 317, 321, 615 S.E.2d 729, 732 (2005) (internal marks omitted). However, in Ellen we refused to extend the application of the doctrine where the plaintiffs were not "seeking any direct benefits from the contracts containing the relevant arbitration clause," or "asserting any rights arising under [those] ... contracts." Id. at 322, 615 S.E.2d at 733.
In the present case, NC Distributor is not simultaneously denying the enforceability of the arbitration clause in the Distribution Agreement with Neusoft China while also claiming a right under the Distribution Agreement. That is, just as in Ellen, the claims for breach of the Non-disclosure Agreement and for unfair and deceptive practices do not necessarily "depend upon the [Distribution Agreement] containing the arbitration clause." Id. at 322, 615 S.E.2d at 733. Rather, these claims depend on legal duties imposed by an agreement which does not contain an arbitration clause and by North Carolina law prohibiting unfair and deceptive practices. As in Ellen, in prosecuting these claims NC Distributor is not "seeking any direct benefits from the contract[ ] containing the relevant arbitration clause," or "asserting any rights arising under [that] ... contract[ ]." Id. at 322, 615 S.E.2d at 733. Accordingly, we hold that the trial court did not err in failing to conclude *859 that equitable estoppel applies to NC Distributor's claims.[4]
2. Merits of Neusoft USA's Appeal and Messrs. Buse and Mildenberger's Appeal
We have reviewed the arguments of Neusoft USA and Messrs. Buse and Mildenberger, and we conclude that the trial court did not err in denying their motions to stay NC Distributor's claims against them pending arbitration of the four arbitrable claims asserted against Neusoft China.
On appeal, Neusoft USA and Messrs. Buse and Mildenberger claim that NC Distributor is seeking damages from them, in part, because of lost profits due to the loss of its exclusivity under the 2003 Distribution *113 Agreement; and, therefore, they argue that they are entitled to a stay until this issue is resolved by arbitration.[5] Specifically, they contend that a portion of the damages that NC Distributor seeks is dependent upon the invalidity of the 2010 amendment to the 2003 Distribution Agreement, which stripped NC Distributor of its status as Neusoft China's exclusive distributor. However, NC Distributor has made no such claim against these Defendants in its pleadings for damages. Rather, NC Distributor only seeks lost profits due to the appropriation by Neusoft USA and Messrs. Buse and Mildenberger of NC Distributor's confidential information, irrespective of any loss of any status under the 2003 Distribution Agreement.[6]
These Defendants contend that the validity of the 2010 amendment predominates the claims for breach of the Non-disclosure Agreement and for unfair and deceptive practices, that the validity of the 2010 amendment can only be determined in arbitration, and that a determination of the validity of the amendment would preclude NC Distributor's success on those claims. However, the claims for breach of the Non-disclosure Agreement and for unfair and deceptive practices present distinct legal issues from those presented by the arbitrable claims, namely whether Defendants or any of them impermissibly used NC Distributor's confidential information to compete with NC Distributor rather than for the permissible purposes of evaluating and negotiating a potential acquisition and whether such use constituted an unfair and deceptive practice under North Carolina law.
IV. Conclusion
We hold that the trial court did not err in denying the motion to refer the claims against Neusoft China for breach of the Non-disclosure *114 Agreement and for unfair and deceptive practices to arbitration or, in the alternative, to stay those claims. Further, we hold that the trial court did not err in denying the other Defendants' motions to stay the claims against them pending the arbitration of four arbitrable claims against Neusoft China. Accordingly, we affirm the orders of the trial court.
AFFIRMED.
Judges STEPHENS and MCCULLOUGH concur.

However, we do not reach the merits of an appellant's claim to that substantial right in answering this threshold jurisdictional question. To do so would, in the words of the United States Supreme Court, "conflat[e] the jurisdictional question with the merits of the appeal." Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 628, 129 S.Ct. 1896, 1900, 173 L.Ed.2d 832 (2009). For example, if a defendant claims sovereign immunity as a defense to an action, a denial of its motion to dismiss based on this defense would generally be immediately appealable. See, e.g., Dep't of Transp. v. Blue, 147 N.C.App. 596, 600, 556 S.E.2d 609, 615 (2001). This is true even where there is no merit to the defense because, e.g., the defendant belongs to an unrecognized Indian tribe. Meherrin Indian Tribe v. Lewis, 197 N.C.App. 380, 385-86, 677 S.E.2d 203, 207-08 (2009). Nevertheless, an appellant who makes a frivolous assertion of a substantial right for an improper purpose (e.g., delay) does so at the risk of being sanctioned by this Court. See N.C. R.App. P. 34.

NC Distributor contends that we lack jurisdiction over Neusoft China's appeal because it is from a denial of a motion for reconsideration, citing this Court's decision in Slaughter v. Swicegood, 162 N.C.App. 457, 591 S.E.2d 577 (2004). However, assuming arguendo that the 2014 order is one denying a motion to reconsider, the effect of the 2014 order nonetheless requires Neusoft China to defend the claims in court.

We note that Neusoft China, Neusoft USA, and Messrs. Buse and Mildenberger all cite § 16 of the Federal Arbitration Act ("FAA"), see 9 U.S.C. 16(a)(1)(A) (2013), as an additional basis for our jurisdiction. However, § 16 of the FAA applies in federal court. See Volt Info. Sci., Inc. v. Bd. of Trs., 489 U.S. 468, 477 n. 6, 109 S.Ct. 1248, 1254 n. 6, 103 L.Ed.2d 488 (1989). State law governs the appealability of interlocutory orders in State court. Elliott v. KB Home North Carolina, Inc., ---N.C.App. ----, ----, 752 S.E.2d 694, 697 (2013).

Neusoft China also argues that the trial court erred in finding that it had waived the right to arbitrate the two remaining claims. We need not reach this argument, as we have concluded that the trial court did not err in concluding that Neusoft China otherwise has no right to compel arbitration of these claims.

Messrs. Buse and Mildenberger also contend that the trial court's order denying their motion to stay the proceedings pending arbitration was erroneous in its omission of an express ruling on the applicability of the FAA. However, while a panel of this Court has held that a trial court's denial of a motion to compel arbitration must contain a finding as to the applicability of the FAA, see Sillins v. Ness, 164 N.C.App. 755, 759, 596 S.E.2d 874, 877 (2004), no such requirement exists for an order granting or denying a motion for a stay, and we decline to impose one.

Neusoft China, Neusoft USA, and Messrs. Buse and Mildenberger also argue at length regarding the eventual calculation of damages. However, "[t]he assessment of damages must, to a large extent, be left to the good sense and fair judgment of the jury, subject, of course, to the discretionary power of the judge to set its verdict aside, when in his opinion equity and justice so require." Matthews v. Lineberry, 35 N.C.App. 527, 528, 241 S.E.2d 735, 737 (1978). Moreover, we do not issue advisory opinions. See, e.g., Lemon v. Combs, 164 N.C.App. 615, 625-26, 596 S.E.2d 344, 350 (2004).