IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-537

Filed 07 February 2023

Davidson County, No. 21CVS2155

JRM, INC., Plaintiff,

v.

THE HJH COMPANIES, INC. D/B/A THE SALT GROUP, THE HJH CONSULTING
GROUP, INC. and TODD G. SIZER, Defendants.

Appeal by defendant from judgment entered 21 January 2022 by Judge
Susan E. Bray in Davidson County Superior Court. Heard in the Court of Appeals
11 January 2023.

> *Nelson Mullins Riley & Scarborough LLP, G. Gray Wilson and Lorin J. Lapidus, for the plaintiff-appellee.*
>
> *Johnston Allison & Hord, PA, by Michael J. Hoefling and Kathleen D.B. Burchette, for the defendant-appellant.*

TYSON, Judge.

JRM Inc. ("Plaintiff") sued HJH Co. and Todd G. Sizer after Plaintiff realized
Sizer had acted without authority and signed a contract binding Plaintiff to HJH.
HJH ("Defendant") moved for an order to compel arbitration. The trial court
concluded HJH had failed to meet its burden to prove a valid arbitration agreement
existed by mutual agreement of all parties. HJH appeals. We dismiss.

## I. Background

Plaintiff manufactures, sells, and distributes irrigation equipment for golf courses and other turf covered surfaces. Plaintiff's office is located in Clemmons. HJH Companies is a Texas corporation doing business as the "The Salt Group." HJH's principal place of business is located in San Antonio, Texas.

HJH's business model centers on generating cost-savings for companies by negotiating lower rates and costs with third-party vendors. HJH then bills those companies for any purported savings. News reports revealed HJH had "overstat[ed] the amount of money clients owed the company so it could tap a line of credit with the bank." A consultant for HJH pled guilty in federal court to knowingly inflating and fabricating figures for unearned estimates of fees to be earned under contingent fee contracts.

During the sentencing hearing, the prosecutor argued the convicted consultant was "only following the orders of his boss," the owner of HJH. The trial court expressed its frustration with the situation, stating: 'This court is going to [ ] hav[e] to fashion an appropriate sentence . . . on the man who really is not the person who should be before the court. But, unfortunately, that's the person we have."

Before 2020, HJH had reached out to Plaintiff's officers on numerous occasions, attempting to convince Plaintiff to enter into an agreement for its purported cost-savings services. Plaintiff's officers repeatedly expressed no desire to contract with HJH, as Plaintiff has historically been able to secure efficient and reasonable agreements with vendors, and HJH's services were not needed.

Plaintiff hired Sizer in mid-October of 2020 as its Chief Financial Officer. Within a couple of weeks of hiring Sizer, he entered an agreement for cost-saving services with HJH on 3 November 2020. The purported agreement included a reference to arbitration agreement provisions included on HJH's website.

Plaintiff's President and Chief Executive Officer, James R. Merritt, submitted a sworn affidavit to the trial court. In the affidavit, Merritt stated only he and his wife, Jennifer B. Merritt, the secretary of JRM, were authorized to enter into or execute contracts on behalf of the company.

Sizer concealed the HJH agreement, and other unauthorized agreements, from Plaintiff's management. In the spring of 2021, Merritt learned of an unauthorized contract Plaintiff had entered into with a third party, who is not a litigant in this case. As a result, Plaintiff amended the company's policy handbook on 22 March 2021, clarifying and listing only Merritt and his wife as having the authority to enter into binding contracts with third parties. Merritt also asked Sizer if he had signed any other contracts. Sizer responded he had not.

Sizer continued to contract with and pay HJH for alleged cost-saving services without authority and without Plaintiff's knowledge or consent. Sizer appeared to know he was unauthorized to contract with HJH, because he waited until HJH's accounts payable manager was out of the office to log into the company's accounting system, add HJH as a vendor, and to secretly pay HJH for alleged cost-savings

services on 26 July 2021. Two days after this conduct, Sizer resigned from the company on 28 July 2021.

Sizer, however, continued to contract with HJH after he submitted his resignation. He signed an addendum to the HJH agreement on 11 August 2021, which purported to obligate Plaintiff to pay $92,298.55 to HJH for "merchant card services that had never been obtained." Plaintiff did not learn about this addendum until after Sizer had left the company. Additionally, Plaintiff received a $15,000 invoice from HJH on Sizer's last official day of employment, which Sizer promised to explain in an email, but never addressed.

Plaintiff subsequently sent Sizer a letter informing him they would withhold his final paycheck to partially mitigate their damages, and they informed him they planned to "continue to investigate [his] role in this matter, and reserve[d] the right to pursue all available civil and criminal remedies to the fullest extent of the law."

Plaintiff received numerous invoices, demand letters, and collection calls from HJH. These communications claimed Plaintiff owed HJH a principal amount of $108,798.55. The amount Plaintiff purportedly owed, however, significantly increased after Plaintiff's lawyers asserted claims against HJH. HJH's final demand letter expressed Plaintiff owed them $241,861.47 for both the principal and interest and threatened to force arbitration to be held in Texas.

According to Merritt, it "would impose an extreme hardship on [Plaintiff] to have to defend a meritless claim in [Texas]." Plaintiff brought several claims against

HJH, including: declaratory relief regarding the validity and scope of the purported contracts, fraud, unfair and deceptive trade practices, illegal conspiracy, recission of the contract, and punitive damages on 22 October 2021. Plaintiff also alleged Sizer breached his fiduciary duty and committed constructive fraud.

HJH moved to dismiss Plaintiff's claims, or alternatively to compel arbitration and stay litigation, on 29 December 2021. Plaintiff served two affidavits in opposition to the motion. HJH filed an untimely affidavit in support of the motion.

A hearing on the motions was held on 10 January 2022. The trial court entered an order striking the affidavit of Tisha Petty ("Petty Affidavit"), who is the Senior Manager Account Services and Legal Liaison for HJH, and denied both of HJH's motions on 20 January 2022. HJH filed a notice of appeal on 7 February 2022.

## II. Jurisdiction

HJH argues the amended order improperly denied its right to compel arbitration, and the trial court's order affects a substantial right and is immediately appealable. HJH also asserts the trial court erred in striking the Petty Affidavit, which supported its motion to compel arbitration.

## III. Standard of Review

Precedents governing the review of the enforceability of arbitration clauses in contracts is well-established:

> Because the law of contracts governs the issue of whether there exists an agreement to arbitrate, *the party seeking arbitration must show that the parties mutually agreed to*

*arbitrate their disputes.*  The trial court's determination of whether a dispute is subject to arbitration is a conclusion of law reviewable de novo.

*T.M.C.S., Inc. v. Marco Contr'rs, Inc.*, 244 N.C. App. 330, 339, 780 S.E.2d 588, 595 (2015) (emphasis supplied) (citations, alterations, and internal quotation marks omitted).

## IV. Analysis

Appellate jurisdiction is conferred by statute.  This Court only possesses jurisdiction over the appeal of "any interlocutory order or judgment of a superior court or district court in a civil action or proceeding" if it "[a]ffects a substantial right."  N.C. Gen. Stat. § 7A-27(b) (2021).

"This Court has repeatedly held 'an order denying arbitration, although interlocutory, is immediately appealable because it involves a substantial right which might be lost if appeal is delayed.'" *Earl v. CGR Dev. Corp.*, 242 N.C. App. 20, 22, 773 S.E.2d 551, 553 (2015) (citations omitted).

While courts should not refuse to implement the terms of an arbitration agreement, if a valid agreement to arbitrate *exists*, a motion to compel arbitration is properly denied if a valid agreement to arbitrate *does not exist*.  "If the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate *unless it finds that there is no enforceable agreement to arbitrate.*"  N.C. Gen. Stat. § 1-569.7(a)(2) (2021) (emphasis supplied).

The party seeking arbitration must show that the parties

> mutually agreed to arbitrate their disputes. . . . The trial court's findings regarding the existence of an arbitration agreement are conclusive on appeal where supported by competent evidence, even where the evidence might have supported findings to the contrary.

*Slaughter v. Swicegood*, 162 N.C. App. 457, 461, 591 S.E.2d 577, 580 (2004) (quoting *Routh v. Snap–On Tools Corp.*, 108 N.C. App. 268, 271–72, 423 S.E.2d 791, 794 (1992), and *Sciolino v. TD Waterhouse Investor Servs., Inc.*, 149 N.C. App. 642, 645, 562 S.E.2d 64, 66 (2002)) (citations and internal quotation marks omitted).

For example, in *Evangelistic Outreach Ctr. v. General Steel Corp.*, this Court affirmed the trial court's denial of a motion to compel arbitration where the trial court resolved conflicts in the evidence regarding whether a valid arbitration agreement *existed.* 181 N.C. App. 723, 726-27, 640 S.E.2d 840, 843 (2007). There, the proponent of the alleged arbitration agreement submitted an unverified motion alleging a one-page purchase order, which noted the agreement was subject to the terms and conditions on its face and on the reverse side. *Id.* at 726, 640 S.E.2d at 843. The proponent submitted a copy of the reverse side, which contained an arbitration clause. *Id.* The proponent also submitted an affidavit from a Customer Service Manager alleging the manager faxed both sides of the agreement to the plaintiff. *Id.* To counter this evidence, the plaintiff submitted both a verified response to requests for admissions, in which plaintiff denied ever receiving the reverse side of the agreement, and an affidavit denying receipt of the second page or any document

referencing arbitration. *Id.* at 727, 640 S.E.2d at 843. Plaintiff also denied entering into any contract including an arbitration clause. *Id.*

As our Court explained:

> The trial court denied defendant's motion in an order stating in relevant part that "[t]he Defendant has failed in its burden of proof to prove that there was an agreement between the parties to arbitrate." Thus, the trial court denied defendant's motion on the grounds that proof of the very *existence* of an arbitration agreement was lacking. We conclude that the evidence supports this conclusion.

*Id.*

Here, the trial court found and concluded HJH had "failed to meet its burden of proving that [a] valid arbitration agreement exist[ed] by mutual agreement of both parties" pursuant to N.C. Gen. Stat. § 1-569.7(a)(2) (2021). The trial court also concluded HJH "failed to meet its burden of showing clear and unmistakable proof that HJH and JRM agreed to delegate the threshold issue of arbitrability to an arbitrator." A trial court may properly deny a motion to compel arbitration if it determines evidence of the "very *existence* of an arbitration agreement [i]s lacking." *Evangelistic Outreach Ctr.*, 181 N.C. App. at 727, 640 S.E.2d at 843.

The trial court did not err as a matter of law by concluding HJH had failed to prove a valid arbitration agreement existed. *Id.* Plaintiff submitted two affidavits to support the assertion it never entered into a valid arbitration agreement with HJH. Defendant did not offer any evidence to support an agreement to arbitrate existed aside from the disputed agreement and the stricken Petty Affidavit. The trial

court struck the Petty Affidavit from the record because HJH did not serve the Petty Affidavit with the motion to compel arbitration, nor was it served at least two days prior to the hearing. N.C. Gen. Stat. § 1A-1, Rule 6(d) (2021) ("When a motion is supported by affidavit, the affidavit shall be served with the motion; and except as otherwise provided in Rule 59(c), opposing affidavits shall be served at least two days before the hearing.").

This Court otherwise lacks jurisdiction to review the portion of the trial court's interlocutory order striking the Petty Affidavit. *See State v. Carver,* 2021-NCCOA-141, ¶23, 277 N.C. App. 89, 94, 857 S.E.2d 539, 543, *writ denied, review denied*, 379 N.C. 156, 863 S.E.2d 597 (2021). In *Carver*, this Court held it may not exercise pendant appellate jurisdiction over interlocutory orders that are not immediately appealable, and "if a trial court denies the State's motion to dismiss based on sovereign immunity—a ruling that is immediately appealable—the State ordinarily cannot appeal the denial of its motion to dismiss on other grounds, even if those other rulings are contained in the same order." *Id.*

Without the untimely Petty Affidavit, the trial court did not err as a matter of law by declining to conclude an agreement to arbitrate existed. *Evangelistic Outreach Ctr.*, 181 N.C. App. at 727, 640 S.E.2d at 843; *Gay*, 271 N.C. App. at 13-14, 842 S.E.2d at 643-44. The trial court's ruling denying the motion to compel arbitration in the absence of the existence of an arbitration agreement is affirmed.

If a valid agreement to arbitrate does not exist, Defendant has failed to show a substantial right is affected. This Court lacks jurisdiction to review the trial court's interlocutory order denying HJH's motion to compel arbitration. N.C. Gen. Stat. §§ 7A-27(b)(3)(a) and 1-569.7(a)(2); *Slaughter*, 162 N.C. App. at 461, 591 S.E.2d at 580. Defendant has not filed a petition for writ of certiorari. N.C. R. App. P. 21.

## V. Conclusion

The trial court properly concluded HJH had failed to show Plaintiff and HJH entered into a valid agreement to arbitrate their disputes. *Evangelistic Outreach Ctr.*, 181 N.C. App. at 727, 640 S.E.2d at 843; *Gay*, 271 N.C. App. at 13-14, 842 S.E.2d at 643-44.

Without the existence of a valid arbitration agreement, no substantial right is shown to warrant immediate review. HJH's appeal is interlocutory. N.C. Gen. Stat. §§ 7A-27(b)(3)(a) and 1-569.7(a)(2); *Slaughter*, 162 N.C. App. at 461, 591 S.E.2d at 580.

This Court lacks appellate jurisdiction to assess the trial court's other findings contained in the order entered on 20 January 2022, and its purported appeal is dismissed. *See Carver*, ¶23, 277 N.C. App. at 94, 857 S.E.2d at 543. *It is so ordered.*

DISMISSED.

Judge HAMPSON concurs.

Judge DILLON concurs with separate opinion.

- 10 -

DILLON, Judge, writing separately.

I essentially agree with the analysis contained in the majority opinion except for the disposition to *dismiss* Defendants' appeal of the trial court's denial of their motion to compel arbitration. I believe the disposition should be to *affirm* the trial court order. That is, I conclude we do have jurisdiction to consider whether Defendants, in fact, have a substantial right which would be forever lost by the trial court's order.

By dismissing the appeal, the majority, in essence, concludes we do not have appellate jurisdiction to consider whether Defendants have a substantial right which would be forever lost by the trial court's interlocutory order. We should not reach the *merits* of Defendants' claim to that substantial right in answering the threshold jurisdictional question. To do so would, in the words of the United States Supreme Court, "conflat[e] the jurisdictional question with the merits of the appeal." *Arthur Andersen v. Carlisle*, 556 U.S. 624, 628 (2009). As that Court instructs, "[j]urisdiction over the appeal[,] 'must be determined by focusing on the category of order appealed from, rather than upon the strength of the grounds for reversing the order.'" *Id.* (quoting *Behrens v. Pelletier*, 516 U.S. 299, 311 (1996)).

Here, the interlocutory order being appealed by Defendants falls within the category of interlocutory orders over which we have jurisdiction to review immediately: an order which denies litigants their motion to compel arbitration.

*DILLON, J., writing separately*

The fact that we all ultimately conclude there is no strength in Defendants' grounds for reversing the trial court's interlocutory order should not affect whether we have appellate jurisdiction to evaluate those grounds. *See Arthur Andersen*, 556 U.S. at 629 ("It is more appropriate to grapple with [the] merits question after the court has accepted jurisdiction over the case."). *See also Neusoft Med. v. Neuisys*, 242 N.C. App. 102, 774 S.E.2d 851 (2015) (arbitration matter); *Meherrin v. Lewis*, 197 N.C. App. 380, 385, 86, 677 S.E.2d 203, 207-08 (2009) (*affirming* trial court's order denying dismissal based on sovereign immunity, concluding appellate jurisdiction existed to consider defendant's claim to sovereign immunity as a member of an Indian tribe, but determining on the merits that the defendant, in fact, did not belong to a recognized tribe and therefore did not have sovereign immunity).

I am aware that parties may assert frivolous claims to some substantial right to put an ongoing case on hold. But an appellant who makes a frivolous assertion of a substantial right for an improper purpose (*e.g.*, delay) does so at the risk of being sanctioned by this Court. *See* N.C. R. App. P. 34. *See also Arthur Andersen*, 556 U.S. at 629 (addressing concern that recognizing appellate jurisdiction might result in frivolous appeals by stating that those bringing such appeals subject themselves to sanctions).

In any event, my disagreement with the majority is essentially over a distinction without a difference, as the majority in its opinion also resolves the key

*DILLON, J., writing separately*

issue on appeal; namely, whether the trial court correctly determined that

Defendants have no right to arbitrate.